Heller, J.
These claims, tried together, are for personal injuries and loss of earnings on the part of Catherine Isabelle Whittaker and for property damages and medical bills on the part of Ronald Whittaker, the husband of Catherine Isabelle Whittaker.
The claimants contend that the State of New York was negligent in reconstructing and maintaining a section of New York State Route No. 28, in failing to sand the highway or to provide adequate guardrails or to have proper warning signs and in retaining an inadequate, outdated system of drainage.
On Sunday, December 19, 1954, the claimant, Catherine Isabelle Whittaker, left her home in Middleville, Herkimer County, at 5:20 a.m., to drive to Herkimer, where she was employed at the Empire Diner as a waitress. Her employment was to have started at 6:00 a.m. She drove her husband’s car, a 1949 Chevrolet sedan, which was in good condition. She had his permission and consent to use the auto.
After leaving her home she drove in a southerly direction on Route No. 28 about four or five miles until she came to a section of said highway known as the “ Dugway ”, which is approximately one half the distance from her home in Middleville, where she lived, and Herkimer, where she worked.
The approach to the “ Dugway ” and the “ Dugway ” is a sweeping curve to the west for some distance and then to the east. The road is an ascending grade of very slight degree when going in a southerly direction. The “ Dugway ” has a concrete retaining wall on the westerly side and an eight-inch concrete wall with a three and one-half foot high iron railing imbedded therein on the easterly side of the highway. To the east of the railing and about four feet below the grade of the *743 highway are the tracks of a branch line of the New York Central Railroad.
There is unobstructed vision throughout the curve. The highway is twenty feet wide throughout the curve with shoulders of three feet on the west side and one and one-half feet on the east side, although the easterly side was narrowed by accumulated snow, apparently pushed there by the snow plows.
Catherine Isabelle Whittaker testified that she left home while it was dark and it was still dark at the time of the accident; that her lights were on and that she knew the temperature was below freezing. The roads were very slippery and she could tell this by the movement of her car. She traveled at about twenty to twenty-five miles per hour as she came into the “ Dugway ” and stated she knew this section was dangerous from previous experience. She had driven over this road practically every day since she became employed on October 12, 1954.
After traveling about eight hundred feet into the “ Dugway ” on her own side of the highway, she observed what she thought was a bare spot which seemed dry. However, as she drove on this spot she started to skid. Her car crossed to the east and struck the guardrail and concrete base, then went through the railing and landed right side up on the railroad tracks. The car was facing north after the accident.
The pictures of the car showed substantial damage to the left front fender and much more damage to the entire right side of the car.
There was no substantial evidence given that the State was negligent by failing to have proper signs or that the drainage was inadequate. The claimants have relied on the theory that the guardrail was inadequate and in disrepair and that the State had notice of such condition.
The guardrail has been the same since the State took over the highway in 1931 or 1932. The guardrail is of two-inch iron pipe, three and one-half feet high. The upright posts are set in concrete and there are two railings joined to the uprights. Each section, or panel, is about ten feet in width and the railing extends approximately 1,860 feet, or the entire distance of the curve which makes up the 11 Dugway. ’ ’
There was evidence that another accident had occurred in the ‘1 Dugway ’ ’ and that another car had taken out two hundred feet of railing before going over the bank onto the railroad tracks. The circumstances were entirely different from this accident.
In approaching the 1 ‘ Dugway ’ ’ from the north it does not seem that this road and the curve are dangerous or perilous. *744 Any person driving this road with full knowledge of the terrain should be able to drive safely without accident. In winter all drivers must exert greater care and restraint.
In the instant claim of Catherine Isabelle Whittaker, she drove into this curve, which she knew well, at a speed of twenty to twenty-five miles per hour on a road she knew was slippery. She skidded, and it was the skidding, which was the sole proximate cause of the accident. The damage to the car indicates that the force of the impact would have constituted a frontal assault on any guardrail, however formidable.
Lack of reasonable care on the part of the State was not established, so the claim of Eonald WTdttaker cannot prevail.
The claimants having failed to establish facts sufficient to constitute a cause of action against the State, the motion to dismiss the claim made at the conclusion of the trial by the Attorney-General is granted.
Judgments to dismiss the claims may be entered.